IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO.  2:14-CV-18-FL

| | | |
|---|---|---|
| ALAN M. DI SCIULLO, and | ) | |
| MARY JO DI SCIULLO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| GRIGGS & CO. HOMES, INC., | ) | |
| DANIEL KEN GRIGGS, and | ) | |
| DEBORA R. GRIGGS, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion in limine to exclude testimony from the following six individuals: 1) Michael O'Steen, 2) Pete Kauffman, 3) Dennis Harrington, 4) Amy Grasso, 5) Glenn Paul, and 6) Peter Pinto.  (DE 99).  The issues raised in defendants' motion have been briefed fully, and in this posture are ripe for ruling.

## DISCUSSION

Where the background of the case has been set forth in prior orders, on the eve of trial the court turns its attention immediately below to the motion at hand.

A.    Applicable Law

Pursuant to Federal Rules of Evidence 402 and 403, defendants seek to exclude testimony by six individuals.  Defendants argue that, with the exception of Pinto, these witnesses will offer expert testimony, and that plaintiffs failed to disclose them as experts in accordance with the Federal

Rules of Civil Procedure.[1]  Plaintiffs respond that these witnesses are un-retained experts, not subject to disclosure rules related to retained experts.

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of proof.  Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001). A district court is granted broad latitude in making its determination on the admissibility of proposed expert testimony.  United States v. Gastaburo, 16 F.3d 582, 589 (4th Cir. 1994) ("The trial judge has broad discretion under Rule 702.").

Rule 702 provides that expert testimony "help[s] the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  "Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993).  Rule 702 provides further that a witness qualified as an expert may be permitted to testify where "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Id.  Courts have distilled the requirements of Rule 702 into two crucial inquiries: whether the proposed expert's testimony is relevant and whether it is reliable.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert, 509 U.S. at 589.

By way of contrast, a lay witness may provide testimony in the form of an opinion which is: 1) rationally based on the witness's perception; 2) helpful to clearly understanding the witness's

---

[2] Defendants do not move explicitly for relief under the Federal Rules of Civil Procedure, although they assert violations of "the rules of discovery" with regard to multiple witnesses.  (See, e.g., DE 99, 7).  To the extent defendants challenge the testimony of witnesses alleged to be retained experts disclosed out of time, the court interprets their motion as one seeking relief pursuant to Federal Rule of Civil Procedure 37.

2

testimony or to determining a fact in issue; and 3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. See Fed. R. Evid. 701. In United States v. Perkins, 470 F.3d 150 (4th Cir. 2006), the Fourth Circuit held "lay opinion testimony must be based on personal knowledge." 470 F.3d at 155–56. "A critical distinction between Rule 701 and Rule 702 testimony is that an expert witness 'must possess some specialized knowledge or skill or education that is not in possession of the jurors.'" Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 203 (4th Cir.2000) (quotations omitted). Therefore, "[a]t bottom . . . Rule 701 forbids the admission of expert testimony dressed in lay witness clothing." Perkins, 470 F.3d at 156.

Federal Rule of Civil Procedure 26(a)(2) requires each party to disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Rule 26(a)(2)(B) requires that expert disclosures "be accompanied by a written report—prepared by and signed by the witness—if the witness is one retained . . . to provide expert testimony in the case. . . . The report must contain a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2). In addition, "[a] party who has made a disclsoure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1).

Although the Fourth Circuit has not addressed the issue directly, courts have considered a number of different factors in determining whether a witness should be regarded as an expert. For

example, in <u>Ager v. Jane C. Stormont Hospital and Training School for Nurses</u>, 622 F.2d 496 (10th Cir. 1980), the Tenth Circuit Court of Appeals considered several factors:

(1)     [T]he manner in which the consultation was initiated;
(2)     the nature, type and extent of information or material provided to, or determined by, the expert in connection with his review;
(3)     the duration and intensity of the consultative relationship; and
(4)     the terms of the consultation, if any (e.g. payment, confidentiality of test data or opinions, etc.).

622 F.2d at 501.  The court recognized that "additional factors bearing on this determination may be examined if relevant."  <u>Id.</u>

For example, one court in this circuit has noted, "the distinction is that the party 'arranged for' the witness to give expert testimony to advance his case and that testimony goes beyond that of an eyewitness. . . . Thus, some courts find that any form of consideration, whether monetary or not, in return for an expert's testimony will put them within the purview of Fed. R. Civ. P. 26(a)(2)(B)'s reporting requirement." <u>Desrosiers v. Giddings & Lewis Mach. Tools LLC</u>, No. CIV-WDQ-07-253, 2009 WL 4406149, at *2 (D. Md. Nov. 25, 2009); <u>see also</u> <u>Day v. Consol. Rail Corp.</u>, No. 95-CIV-68, 1996 WL 257654, at *3 (S.D.N.Y. May 15, 1996) ("[T]he witness in question . . . although employed by the defendant, is being called solely or principally to offer expert testimony, [so] there is little justification for construing the rules as excusing the report requirement. . . . Moreover, although defendant might argue that [the witness] is not receiving extra compensation for that performance—the record is silent on the matter—the rules contain no disclosure exemption for experts who are not monetarily compensated.").

Failure to file a compliant Rule 26(a)(2)(C) disclosure for an expert who is in effect a retained expert may result in exclusion of that expert's testimony pursuant to Federal Rule of Civil

4

Procedure 37(c)(1).  See United States v. Davis, 690 F.3d 226, 257–58 (4th Cir. 2012).  The rule

states, in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a)
> or (e), the party is not allowed to use that information or witness to supply evidence
> . . . at a trial, unless the failure was substantially justified or is harmless.  In addition
> to or instead of this sanction, the court . . . may impose other appropriate sanctions.

Fed. R. Civ. P. 37(c)(1).

In the Fourth Circuit, a district court has "broad discretion to determine whether

nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1)

exclusion analysis."  S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th

Cir. 2003).  In making this determination, district courts weigh the following factors:

(1)     [T]he surprise to the party against whom the witness was to have testified;
(2)     the ability of the party to cure that surprise;
(3)     the extent to which allowing the testimony would disrupt the trial;
(4)     the explanation for the party's failure to name the witness before trial; and
(5)     the importance of the testimony.

Id.  The first four factors relate to harmlessness, while the last factor relates mainly to substantial

justification, and the court need not consider every factor.  See, e.g., id.  The burden of showing that

non-disclosure was substantially justified or harmless lies with the non-disclosing party.  See id. at

596.

B.      Application to Six Challenged Witnesses

1.      Michael O'Steen

In the proposed pretrial order, plaintiffs forecast O'Steen's testimony as follows: "Michael O'Steen is the engineer of record and will offer testimony concerning the engineering and inspection of the Home and how Defendants' construction of the Home deviated from the engineered plans and best building practices." ("Proposed Pretrial Order," 33 ¶ 3). In correspondence with plaintiffs' counsel, O'Steen assesses various aspects of defendants' work on the house, compares it to the construction documents he sealed in advance of construction, and renders an opinion that defendants' work failed to conform with the plans. (See DE 99-5). O'Steen is licensed with the National Council of Examiners for Engineering and Surveying ("NCEES"), and he holds a degree in Civil and Structural Engineering. (See id.). O'Steen's correspondence with plaintiffs' counsel shows that he rendered his opinion at counsel's request. (See id.) ("I was requested to verify certain structural members for the above referenced subject structure."). In his letter, O'Steen describes visiting the house on March 11, 2016.

Plaintiffs did not disclose O'Steen in their initial disclosure to defendants of individuals likely to have discoverable information. (See DE 103-2) (identifying only Steve Daniels and Pete Kauffman, and specifying that neither is a retained expert specially employed to provide expert testimony). Instead, O'Steen first was identified on September 11, 2014, in defendants' initial disclosure under Rule 26(a)(1). (DE 103-3, 2 ¶ A.8) ("Mr. O'Steen would possess information concerning the engineering and inspection of the plaintiff's home."). On November 25, 2014, in their responses to plaintiffs' first set of interrogatories and request for production of documents, defendants stated: "No expert witnesses have been retained at this. [sic] . . . . Michael O'Steen, P.E.,

and Rick House of House Engineering, P.C., may be called regarding their engineering work and inspection of the home, and would be expected to provide their opinions . . . that the [plaintiffs'] home was properly constructed within appropriate industry standards." (DE 103-4, 2 ¶ 2). On March 25, 2016, plaintiffs' counsel informed defendants' counsel that plaintiffs planned to call O'Steen as a witness in order to "ask him whether the house as built deviates at all from his plans, the code, and best building practices." (DE 103-8). Thereafter, on April 11, 2016, defendants' counsel met with O'Steen, and they allege that O'Steen "represented that he found no indications of framing defect in the construction of the Plaintiffs' home, although he . . . had been asked to go back and look at other areas regarding the roofing and framing." (DE 99, 7).

Defendants argue that plaintiffs "attempt to add Michael O'Steen as an expert witness, including for the first time revealing inspection reports more than a year past the date that discovery has closed." (Id. at 8). Plaintiffs respond that defendants themselves designated O'Steen an "un-retained expert," and as a result he was not required to prepare a written report pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).

In this case, based on the description of proposed testimony, O'Steen's anticipated testimony involves a mixture of expert and lay opinions. His anticipated testimony regarding best building practices and compliance with the North Carolina State Building Code implicates knowledge of issues beyond "the everyday knowledge and experience of a lay juror." See Kopf, 993 F.2d at 377. In addition, O'Steen's education, experience, and license with NCEES, tend to show that he would render an expert opinion on these matters. See Kumho Tire, 526 U.S. at 147. Accordingly, the portion of his testimony regarding "how Defendants' construction of the Home deviated from . . . best building practices" represents an expert opinion. (See "Proposed Pretrial Order," 33 ¶ 3).

However, O'Steen's testimony regarding observations he made of plaintiffs' house during a visit on March 11, 2016, represents testimony regarding alleged facts. His testimony regarding the content of building plans depicting plaintiff's house, which he sealed for approval, similarly is in regard to alleged facts. For example, O'Steen reports to plaintiffs' counsel about the dimensions of certain rooms, and he observed that the "[t]he floor(s) within these areas were observed to deflect or sag within the middle." (DE 99-5, 2). Such testimony represents a lay opinion for purposes of Federal Rule of Evidence 701. It is rationally based on O'Steen's perception of the house during his visit on March 11, 2016; it is helpful to understanding his testimony describing the sealed plans for the house and its current design; and it is based on his personal knowledge of the plans he sealed and the parts of the house he visited. See Fed. R. Evid. 701. Accordingly, the court finds this aspect of O'Steen's anticipated testimony to be the testimony of a lay witness.

The court considers next whether plaintiffs retained O'Steen as an expert for purposes of disclosures required under Federal Rule of Civil Procedure 26(a). With regard to "the manner in which the consultation was initiated," see Ager, 622 F.2d at 501, the record shows that plaintiffs' counsel solicited O'Steen's testimony on behalf of their clients. (See DE 99-5) ("I was requested to verify certain structural members for the above referenced subject structure."). After plaintiffs' counsel solicited his testimony, O'Steen inspected the house, which provided some basis for his opinion. (DE 99-5). The record is silent regarding the "duration and intensity," Ager, 622 F.2d at 501, of O'Steen's relationship with plaintiffs' counsel, but, based upon their correspondence, it is clear that some relationship existed. Moreover, plaintiffs concede that, as early as November 25, 2014, they were aware O'Steen might possess discoverable information. (See DE 103).

The terms of plaintiffs' consultation with O'Steen are unclear. (See DE 103, 5–7) (specifying that plaintiffs have not compensated Kauffman, but providing no description of plaintiffs' relationship with O'Steen); see Ager, 622 F.2d at 501. However, regardless of compensation, correspondence between plaintiffs' counsel and O'Steen makes clear that plaintiffs' counsel initiated their relationship, and "arranged for" O'Steen to give expert testimony in order to advance plaintiffs' case. See Desrosiers, 2009 WL 4406149, at *2. Therefore, in consideration of these factors, the court finds that plaintiffs retained O'Steen as an expert for purposes of disclosures required pursuant to Federal Rule of Civil Procedure 26(a).

Pursuant to the court's case management order, the deadline for disclosure of potentially relevant witnesses was August 15, 2014. (DE 38, 2 ¶ I.A); see Fed. R. Civ. P. 26(a). Pursuant to the same order, "[d]isclosures required by Federal Rule of Civil Procedure 26(a)(2), including reports from retained experts, shall be served by the parties by December 15, 2014." (Id. at 2 ¶ I.H). Supplementations of expert disclosure reports were due "forty (40) days before the deadline for completion of all discovery," which was January 6, 2015.[2] (See id. 3 ¶ I.I).

O'Steen first was identified on September 11, 2014, pursuant to Federal Rule of Civil Procedure 26(a)(1). (DE 103-3, 2 ¶ A.8). However, plaintiffs disclosed no experts, and did not list O'Steen in their initial disclosure required by Federal Rule of Civil Procedure 26(a)(2). (See DE 103-2). Neither did plaintiffs file any supplementations to their disclosures during the course of

---

[3] In its case management order, issued on August 4, 2014, the court ordered, in relevant part: "Supplementations of disclosures under Federal Rule of Civil Procedure 26(e) shall be served at such times and under such circumstances as required by that rule. In addition, such supplemental disclosures shall be served by December 4, 2014. The supplemental disclosures served forty (40) days before the deadline for completion of all discovery must identify the universe of all witnesses." (DE 38, 3 ¶ I.I). However, discovery in this case was to be completed by February 15, 2015. (DE 38, 2 ¶ I.C). January 6, 2015, marked 40 days prior to the close of discovery. Accordingly, the deadline for filing supplementations of disclosures under Federal Rule of Civil Procedure 26(e) was January 6, 2015. In any event, as noted in the text, plaintiffs did not disclose any retained experts.

9

discovery. Plaintiffs' failure to disclose O'Steen as an expert witness, and the portion of O'Steen's anticipated testimony that constitutes an expert opinion, risk substantial prejudice to defendants because it denies them the opportunity to prepare for and respond to that portion of O'Steen's anticipated testimony that constitutes an expert opinion. See Fed. R. Evid. 403; see also Mutual Federal Sav. and Loan Ass'n v. Richards & Associates, Inc, 872 F.2d 88, 93 (4th Cir. 1989) (finding a party prejudiced due to deprivation of material information regarding the opposing party's claims).

The court has determined that a portion of O'Steen's anticipated testimony includes an expert opinion, that plaintiffs' counsel retained O'Steen for purposes of advancing plaintiffs' case at trial, and that O'Steen was disclosed in a timely manner under Federal Rule of Civil Procedure 26(a)(1), but that he was not disclosed as an expert under Rule 26(a)(2). Accordingly, with respect to that portion of the anticipated testimony that constitutes an expert opinion, the court grants defendants' motion to exclude O'Steen's testimony. See Fed. R. Civ. P. 37(c)(1). With respect to the portion of O'Steen's anticipated testimony that constitutes a lay opinion, the court denies defendants' motion to exclude his testimony.

2.    Pete Kauffman

In the proposed pretrial order, plaintiffs forecast Kauffman's testimony as follows:

> Peter Kauffman is a contractor and is expected to testify regarding the condition of the Home's hardwood floors, other issues at the Home, and the cost to repair or address any issues found by Mr. O'Steen at the Home. He may also offer testimony about the lawsuit involving Peter Pinto and the Contractor. He became involved with the Home in September of 2013, and he may also testify regarding labor and materials overages for the framing, siding, and trim at the Home.

("Proposed Pretrial Order," 33 ¶ 4). Plaintiffs first disclosed Kauffman to defendants on August 15, 2014, as a potential witness "likely ha[ving] knowledge concerning the condition of the hardwood floors in the [defendants'] house." (DE 103, 5 ¶ A.18). On March 2, 2015, in response

10

to an interrogatory by defendants, plaintiffs identified Kauffman as an individual with whom they "spoke[] to or otherwise communicated with regarding problems or issues . . . with the construction or quality of [plaintiffs'] home." (DE 99-3, 2 ¶ 2; 99-3, 6 ¶ 2.p).

Defendants argue that plaintiffs attempted to avoid being required to provide disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2) "by saying that [Kauffman] was not a 'retained expert.'" (DE 99, 3). In addition, as a basis for their motion to exclude Kauffman's testimony, defendants allege that Kauffman has a friendly business relationship with Pinto, whom defendants describe as having "a vendetta against [defendant] Griggs Homes." (Id. at 6).

In response, plaintiffs argue that Kauffman's anticipated testimony is in keeping with his status as an un-retained expert. Therefore, plaintiffs argue, he was not required to prepare a written report pursuant to Federal Rule of Civil Procedure 26(a)(2)(B). In further support of Kauffman's non-expert status, plaintiffs allege that he has not charged plaintiffs for any inspections of the house, and that he has not charged plaintiffs for his preparation for testifying at trial. Lastly, plaintiffs argue that any failure to make disclosures is either justified or harmless because defendants failed to seek disclosure until 17 months after plaintiffs designated Kauffman an un-retained expert.

In this case, based on the proposed testimony, the court finds that Kauffman's anticipated testimony involves a mixture of expert and lay opinions. In particular, his anticipated testimony involving costs of repairs and "materials overages for the framing, siding, and trim" of plaintiff's house (see "Proposed Pretrial Order," 33 ¶ 4), implicates knowledge of issues beyond "the everyday knowledge and experience of a lay juror." See Kopf, 993 F.2d at 377. For example, Kauffman offers to plaintiffs' counsel his professional opinion regarding "[t]he prevailing rate for a skilled carpenter in this area." (DE 99-4, 1 ¶ 3). In addition, Kauffman's experience as a contractor

involved in the construction of hardwood floors tends to show that he may render an expert opinion on that issue as it pertains to plaintiffs' house. See Kumho Tire, 526 U.S. at 147. Accordingly, the portion of his anticipated testimony relating to estimated costs of repairs and building materials represents an expert opinion. See id.

However, Kauffman's testimony regarding observations he made of plaintiffs' house during his "visit[s] [to] the home on several occasions," (DE 99-4), represents testimony regarding alleged facts. His testimony regarding the content of copies of invoices and a "job ledger" similarly is in regard to alleged facts. For example, Kauffman reports that "[t]he job ledger shows that the homeowner was charged $53,100 for the framing labor of the house." (Id. at 1 ¶ 1). Such testimony represents a lay opinion for purposes of Federal Rule of Evidence 701. By contrast, the remaining portion of that paragraph, in which Kauffman estimates "the fair market value of the framing labor," and renders an opinion on whether "the homeowners were overcharged," represents an expert opinion. (Id.). Accordingly, the court finds that the portion of Kauffman's testimony that is based upon his personal observations of facts concerning the house, and that does not implicate knowledge beyond the experience of a lay juror, is the testimony of a lay witness.

The court considers next whether plaintiffs retained Kauffman as an expert for purposes of disclosures required under Federal Rule of Civil Procedure 26(a). With regard to "the manner in which the consultation was initiated," see Ager, 622 F.2d at 501, plaintiffs' counsel solicited Kauffman's testimony on behalf of their clients. (See DE 99-4) ("I was asked by your firm to provide an opinion of several issues related to the construction of the [plaintiffs'] home."). After plaintiffs' counsel solicited his testimony, Kauffman was provided with "digital photos that were taken during the construction of the home," which formed some basis for his opinion. (See DE

12

99-4). The record is silent regarding the "duration and intensity," <u>Ager</u>, 622 F.2d at 501, of Kauffman's relationship with plaintiffs' counsel, but, based upon their correspondence, it is clear that some relationship existed. (<u>See</u> DE 99-4) ("Based upon the information that I was provided and my inspection of the work, I have the following opinions of the construction of the home and the costs charged[.]").

The record is unclear regarding the terms of plaintiffs' consultation with Kauffman, although plaintiffs allege the following: "Mr. Kau _ man [sic] has not charged Plaintiffs for any inspections he has conducted of their residence, or in preparation for his testimony at trial. Plaintiffs have not claimed that Mr. Kau nan's [sic] communications with them, or their counsel, are work product protected or privileged." (DE 103, 6–7). However, regardless of compensation, correspondence between plaintiffs' counsel and Kauffman makes clear that plaintiffs' counsel initiated their relationship, and "arranged for" Kauffman to give expert testimony in order to advance plaintiffs' case. <u>See</u> <u>Desrosiers</u>, 2009 WL 4406149, at *2. Therefore, in consideration of these factors, the court finds that plaintiffs retained Kauffman as an expert for purposes of disclosures required pursuant to Federal Rule of Civil Procedure 26(a).

The deadlines governing disclosure of O'Steen as an expert witness apply to Kauffman as well. (<u>See</u> DE 38, 2 ¶ I.A, H) (setting August 15, 2014, as the deadline for disclosure of potentially relevant witnesses, and setting December 15, 2014, as the deadline for disclosure of reports from retained experts). Supplementations to any expert disclosures were due January 6, 2015. (<u>See</u> <u>id.</u>).

However, plaintiffs disclosed no experts, and noted Kauffman only as a witness likely to have knowledge concerning the condition of hardwood floors in plaintiffs' house. (<u>See</u> DE 103, 5 ¶ A.18). Plaintiffs' response to defendants' interrogatory concerning Kauffman, in which they

13

described his anticipated testimony "regarding problems or issues . . . with the construction or quality of [plaintiffs'] home," (DE 99-3, 2 ¶ 2; 99-3, 6 ¶ 2.p), was not timely filed. (See DE 38, 2–3). Moreover, plaintiffs' failure to disclose Kauffman as an expert witness, and the content of the portion of Kauffman's anticipated testimony pertaining to his expert opinion, risk substantial prejudice to defendants because it denies them the opportunity to prepare for and respond to the portion of Kauffman's anticipated testimony that constitutes an expert opinion. See Fed. R. Evid. 403; see also Mutual Federal Sav. and Loan Ass'n, 872 F.2d at 93. In sum, the court finds that a portion of Kauffman's anticipated testimony includes an expert opinion, that plaintiffs' counsel retained Kauffman for purposes of advancing plaintiffs' case at trial, and that plaintiffs failed to disclose or supplement their disclosures related to the portion of Kauffman's testimony that constitutes an expert opinion pursuant to Federal Rule of Civil Procedure 26(a)(2).

The court considers next whether excluding Kauffman's testimony is substantially justified or harmless for purposes of Rule 37(c)(1). See S. States Rack & Fixture, Inc., 318 F.3d at 597. Defendants concede that they were aware plaintiffs planned to call Kauffman as a witness, but allege that, on April 22, 2016, they were surprised by plaintiffs' disclosure that Kauffman would deliver an expert opinion regarding defendants' alleged "breach of the applicable standards of care, including provisions of the building code." (DE 99-2, 4 ¶ 2(ii)). Defendants' ability to cure that surprise prior to trial was curtailed by the untimely nature of plaintiffs' disclosure of the portion of Kauffman's anticipated testimony pertaining to his expert opinion. (See DE 99; 99-4); see also S. States Rack & Fixture, Inc., 318 F.3d at 597. Allowing Kauffman to testify would have a significant impact at trial, where his anticipated testimony goes to defendants' alleged breach of standards of

care, and where he may testify as to defendants' deviations from applicable building codes. See S. States Rack & Fixture, Inc., 318 F.3d at 597.

Although plaintiffs identified Kauffman before trial, they explain that they failed to identify him as an expert because they designated him an "un-retained expert." (DE 103, 6). Plaintiffs' unilateral designation does not alter the substance of the portion of Kauffman's anticipated testimony that pertains to his expert opinion. See Perkins, 470 F.3d at 156 ("Rule 701 forbids the admission of expert testimony dressed in lay witness clothing."). Plaintiffs appear to have recognized that they solicited Kauffman to provide expert testimony in order to advance their case; accordingly, their explanation for their failure to name Kauffman as an expert witness before trial is unavailing. See S. States Rack & Fixture, Inc., 318 F.3d at 597. While the portion of Kauffman's testimony that relates to his expert opinion may be relevant as it pertains to the issue of plaintiffs' damages, the combined weight of the other factors tends to show that plaintiffs' failure to disclose Kauffman as an expert is not harmless or without prejudice. See id.

Accordingly, with respect to the portion of Kauffman's anticipated testimony that constitutes an expert opinion, the court grants defendants' motion to exclude his testimony. With respect to the portion of Kauffman's testimony that represents a lay opinion, the court denies defendants' motion to exclude his testimony.

3.     Dennis Harrington

Plaintiffs no longer intend to call Harrington as a witness. (See DE 103, 1 n.1). Instead, plaintiffs plan for Kauffman to address the subject matter of Harrington's previously anticipated testimony. Accordingly, defendants' motion to exclude testimony from Harrington is denied without prejudice as moot.

4.      Amy Grasso

In the proposed pretrial order, plaintiffs forecast Grasso's testimony as follows:

> Amy Grasso is the President and Owner of Aero Pest Control, and she will testify as
> to the termite infestation at Plaintiffs' Home and possible causes for the infestation.
> She completed extensive examination and treatment at the home, and she will testify
> that there is a potential for future issues at the home because of termites.

(PTO, 34 ¶ 8).  Defendants argue that Grasso's anticipated testimony is expert testimony, and that

plaintiffs failed to designate her as an expert for purposes of discovery disclosures.  In addition,

defendants argue that plaintiffs failed to identify her in response to relevant interrogatories, and

failed to timely submit documents related to Grasso's work on the house.

However, in plaintiffs' memorandum responding to defendants' motion to exclude Grasso's

testimony, plaintiffs caption their argument as follows: "Amy Grasso and/or Jaymi Padilla Should

Be Permit  i ed [sic] To Testify At The Trial Of This Matter."  (DE 103, 7).  Recent correspondence

between counsel for the parties shows that plaintiffs no longer plan to call Grasso as a witness.  (See

DE 103-6).  Instead, plaintiffs' counsel "confirmed that we can just use Jaymi [Padilla] instead of

Amy [Grasso]."  (Id.).  In the same email, plaintiffs' counsel indicated to defendants' counsel that

Padilla is available for a deposition on May 9, 2016.  (Id.).  Accordingly, defendants' motion to

exclude testimony from Grasso is denied without prejudice as moot.

Plaintiffs did not disclose Padilla in any pretrial disclosures during discovery, and they do

not include Padilla as a witness in the proposed pretrial order submitted to the court.  (See "Proposed

Pretrial Order, 32–35).  Any attempt to disclose Padilla now as an expert would be out of time.  (See

DE 38, 2 ¶ I.A, H) (setting August 15, 2014, as the deadline for disclosure of potentially relevant

witnesses, and setting December 15, 2014, as the deadline for disclosure of reports from retained

experts).

16

Although plaintiffs do not describe the content of Padilla's anticipated testimony, they suggest that "a representative of Arrow Pest Control is set to testify at trial and offer testimony made of factual matters she observed at Plaintiffs' residence." (DE 103, 8). Among the correspondence exchanged between counsel for the parties, there is an invoice detailing a termite treatment of the house, "[s]erviced [b]y: J. Padilla, A Grass, D. Conrason, C. Turrestte." (DE 103-7, 4). The invoice shows that the visit occurred on August 31, 2015. (Id.). Therefore, it appears that evidence exists showing that Padilla visited plaintiffs' house on at least one occasion. Padilla's observations on the appearance of various parts of plaintiffs' residence, based upon Padilla's personal inspection, may be admissible as testimony by a lay witness. See Perkins, 470 F.3d at 155–56 ("[L]ay opinion testimony must be based on personal knowledge.").

However, any testimony by Padilla that is based upon scientific, technical, or other specialized knowledge represents expert testimony, and such testimony must be excluded. See Fed. R. Evid. 701, 702; Fed. R. Civ. P. 37(c)(1). For example, if Padilla's testimony resembles Grasso's forecasted testimony, in that it touches upon "possible causes for the [termite] infestation," or "potential for future issues at the home because of termites," (see "Proposed Pretrial Order," 34 ¶ 8), then that portion of Padilla's testimony implicates knowledge of issues beyond "the everyday knowledge and experience of a lay juror." See Kopf, 993 F.2d at 377. Accordingly, such portions of Padilla's testimony must be excluded due to plaintiffs' failure to disclose timely Padilla as a retained expert. See Fed. R. Evid. 701, 702; Fed. R. Civ. P. 37(c)(1).

5.      Glenn Paul

Defendants describe the substance of Paul's de bene esse deposition as follows: "Mr. Glenn Paul of Gran Plan Restorations, LLC, . . . [was] called in to examine wet conditions under the Di Sciullo home in September of 2015.  Based upon wet conditions under portions of the Plaintiffs' home, Gran Plan Restorations contracted with a company to seal the crawlspace and install a dehumidifier."  (DE 99, 9–10).

Pursuant to Rules 402 and 403, defendants seek to exclude testimony by Paul on the basis that "Griggs Homes had nothing to do with this aspect of the construction, nor was it ever called to evaluate any conditions of moisture around the home."  (DE 99, 10).  Plaintiffs "disagree with Defendants' assertion that they are not responsible for the matters observed by Mr. Paul," and they argue that the issue of responsibility should be left to the jury.  In addition, plaintiffs point to defendants' counsel's failure to offer any objections during Paul's de bene esse deposition.

"Rule 402 provides that all relevant evidence is admissible, except as otherwise provided by the United States Constitution, by Act of Congress, or by applicable rule."  United States v. Abel, 469 U.S. 45, 50–51 (1984).  Rule 401 defines "relevant evidence" as having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.  See id.

Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  Analysis under this rule "entails a dual inquiry."  Mullen v. Princess Anne Volunteer Fire Co., 853 F.2d 1130, 1133 (4th Cir. 1988).  First, the court must "look to the probative value of the evidence on the question" sought to be

18

proved.  Id.  Second, the court must  "examine the possibility that the evidence will cause unfair prejudice to the defendant" or other "harmful consequences."  Id.

Rule 403 properly is applied "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and that risk is disproportionate to the probative value of the offered evidence."  United States v. Aramony, 88 F.3d 1369, 1378 (4th Cir. 1996) (internal quotations omitted).  Evidence should be excluded pursuant to Rule 403 "only sparingly."  Id. "Unfair prejudice under Rule 403 does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence."  United States v. Mohr, 318 F.3d 613, 619 (4th Cir. 2003).  Evidence need only be excluded if it "damages an opponent for reasons other than its probative value, for instance, an appeal to emotion, and only when that unfair prejudice substantially outweighs the probative value of the evidence."  Id.

If the jury finds that defendants breached the Contract, then it must determine the amount of damages the breach caused plaintiffs to suffer.  Plaintiffs allege that defendants caused them to suffer damages when plaintiffs had to hire Paul and Gran Plan Restorations in order to seal the crawlspace and install a dehumidifier.  Paul's testimony is relevant under Rule 401 because it goes to monetary costs plaintiffs incurred to complete tasks that they allege were left improperly unfinished under the terms of the parties' Contract.  Defendants' argument that evidence of such repairs is irrelevant because they occurred after defendants left the work site is inapposite.  The value of repairs required after defendants left the work site goes towards the issue of damages; and it is a question of fact for the jury to decide, as part of its deliberations on plaintiffs' contract claim, whether defendants caused these particular damages related to the crawlspace.

This evidence is significantly probative under Rule 403. If the jury determines that defendants caused damages related to the crawlspace, then testimony regarding sealing the crawlspace will tend to show the monetary value of plaintiffs' damages. Such evidence does not damage defendants "for reasons other than its probative value, for instance, [by] an appeal to emotion," see Mohr, 318 F.3d at 619, nor is it likely to excite "irrational behavior" in the jury. See Aramony, 88 F.3d at 1378. Therefore, on balance, the risk of prejudice is not disproportionate to the value of the testimony as evidence of damages. Accordingly, the court denies defendants' motion to exclude evidence of Paul's de bene esse deposition regarding his company's work on the crawlspace.

6.    Peter Pinto

In the parties' proposed pretrial order, plaintiffs explain that "Pinto is expected to testify regarding his prior business relations and litigation with the Contractor and Daniel Ken Griggs. He can also testify as to the workmanship of Griggs & Co. Homes, Inc., and self-dealing that the Contractor has engaged in during past projects." Defendants do not state specific bases for their objection to the testimony of Pinto. They allege that Pinto has a "vendetta against Griggs Homes," and that he has a friendly business relationship with another disputed witness, Kauffman. (DE 99, 6). Plaintiffs respond that some of Pinto's testimony is admissible, and that his testimony should not be precluded in its entirety.

The court notes that Federal Rule of Evidence 404(b) provides, in part, that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(b). However, evidence of prior acts may be admissible "for another purpose, such as proving motive, opportunity, intent,

20

preparation, plan, knowledge, identity, absence of mistake, or lack of accident." <u>Id.</u> "This list . . . is not exhaustive." <u>United States v. Rawle</u>, 845 F.2d 1244, 1247 (4th Cir. 1988).

The Fourth Circuit Court of Appeals has held that, "the prior act which is alleged to be probative of an element of the crime must be sufficiently related to the charged offense." <u>United States v. Johnson</u>, 617 F.3d 287, 297 (4th Cir. 2010). In particular, "the more closely the prior act is related to the charged conduct—either in time, pattern, or state of mind—the more probative it is of the defendant's intent or knowledge in relation to the charged conduct." <u>Id.</u> The impact of dissimilarity between the prior act evidence and the charged act, and of the remoteness in time of the prior acts, on the admissibility of the prior acts evidence depends upon the nature of the fact the jury will be asked to infer from the evidence. <u>See</u> <u>Federal Courtroom Evidence</u> 9-26 (LexisNexis, 5th ed. 2015).

Description of Pinto's anticipated testimony implicates potential evidence of defendant Ken Griggs's prior acts that touch upon his character. Such evidence is not admissible to show that he acted in accordance with a particular character trait, <u>see</u> Fed. R. Evid. 404(b), nor is it sufficiently relevant to plaintiffs' remaining claims against defendant Ken Griggs. <u>See</u> Fed. R. Evid. 401, 403. Accordingly, the court grants defendants' motion to exclude Pinto's testimony regarding his prior business relations and litigation with defendants, as well as his testimony regarding workmanship and alleged self dealing by defendant Griggs & Co. Homes, Inc. in other construction projects.

## CONCLUSION

Based upon the foregoing discussion, the court resolves as follows defendants' motion to exclude testimony by certain witnesses (DE 99):

1.  Motion to exclude anticipated testimony by Michael O'Steen is GRANTED as to testimony including expert opinions, and is DENIED as to testimony regarding lay opinions.

2.  Motion to exclude anticipated testimony by Pete Kauffman is GRANTED as to testimony including expert opinions, and is DENIED as to testimony regarding lay opinions.

3.  Motion to exclude anticipated testimony by Dennis Harrington is DENIED WITHOUT PREJUDICE as moot.

4.  Motion to exclude anticipated testimony by Amy Grasso is DENIED WITHOUT PREJUDICE as moot. Portions of testimony by Grasso's employee, Jaymi Padilla, may be admitted as they pertain to lay opinions.

5.  Motion to exclude evidence of de bene esse deposition of Glenn Paul is DENIED.

6.  Motion to exclude anticipated testimony by Peter Pinto is GRANTED.

SO ORDERED, this the 9th day of May, 2016.


LOUISE W. FLANAGAN
United States District Judge